UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA JANET HOFFMAN,

        Civil No. 07-602-HA

       Plaintiff,

   v.           OPINION AND ORDER

WINCO HOLDINGS, INC.,
a foreign business corporation,

       Defendant.

_____

HAGGERTY, Chief Judge:

      Plaintiff alleges that her former employer, defendant WinCo Holdings, Inc.,

discriminated and retaliated against her in violation of 42 U.S.C. § 2000e *et seq.* (Title VII) and

Oregon Revised Statutes (ORS) 659A.

## I.    BACKGROUND

      The following facts are undisputed unless otherwise noted and are stated in the light most

favorable to plaintiff.

  PAGE 1 - OPINION AND ORDER

Plaintiff was employed by defendant from November 11, 2004, to May 10, 2005. She worked as a checker at a supermarket in Hillsboro, Oregon.

Plaintiff, a Caucasian, alleges that during her employment she was subjected to offensive racial comments on a continual basis. Plaintiff's chief antagonist was Mary Ann Whiting Esteban, a co-worker of mixed Filipino and Caucasian descent. Plaintiff alleges that she overheard Esteban make the following comments:

- Telling a male co-worker that "he acted like a stupid white boy." Pl. Dep. 66:8-9
- Calling another co-worker "whitey" and "white boy." *Id.* at 66:23-25.
- Singing the words "whitey, whitey, stupid white boy." *Id.* at 67:1-4.
- Telling plaintiff that putting sugar on strawberries was a "white people thing" and that she didn't like "sugar because it's so white, it's a white people thing." *Id.* at 67:5-13.
- Telling plaintiff that she would take a "white napkin and throw it in the trash." *Id.* at 67:14-17. Plaintiff alleges that this was an "insinuating remark regarding white trash." Pl.'s Concise Statement of Material Facts ¶ 7.
- Referring to another co-worker as "white boy" and saying "[c]ome here white boy." *Id.* at 72:2-4.
- Saying that "the people in the deli are white. What do you expect from white people?" Pl. Decl. ¶ 10.
- Screaming "stupid fucking white people" after she was reprimanded for making the comments listed above. Pl. Dep. at 74:14-20.

In addition, Esteban made comments about "dumb haoles" and "stupid fucking haoles" in front of plaintiff. *Id.* at 66:15-19. "'Haole' is a Hawaiian term, sometimes used derogatorily, referring to persons of the Caucasian race." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1096 n.2 (9th Cir. 2002).

Plaintiff also alleges that Olivear Henry, a co-worker, made a comment "about white trash living off of welfare." Pl. Dep. 75:22-76:1.

Many of these remarks were made in front of Cassie Ortega, plaintiff's supervisor.

PAGE 2 - OPINION AND ORDER

In January 2005, plaintiff reported the racially insensitive remarks to Roger Cochell, a vice president of human resources, and Russ Tripp, manager of the Hillsboro store.  In response to these complaints, defendant issued Esteban a warning.

Plaintiff claims that she faced increased harassment following her January complaint. Plaintiff alleges that Ortega began following her around the store and into the restroom in January 2005.  Pl. Decl. ¶ 2, 3.  After plaintiff confronted Ortega about this behavior, other employees allegedly began following plaintiff into the restroom in February 2005.  Pl. Decl. ¶ 4. These employees included Kristin Lashbrook, Becca Smith-Carlson, Michelle Doss, and Olivear Henry.  *Id.*  Plaintiff alleges that "these employees would pace back and forth outside the stalls, watching me through the crack between the door and stall walls.  None would use the facilities." *Id.*  Two co-workers allegedly told plaintiff that Ortega had instructed employees to keep an eye on her.  Pl. Decl. ¶ 5, 6.

Plaintiff complained numerous times about the behavior of Esteban, Ortega, and other co-workers.  Plaintiff reported that she was being followed into the restroom to Valerie Davis, a human resources employee.  Plaintiff also called Cochell several times to complain that conditions at the Hillsboro store had not improved.  Plaintiff testified that when she spoke with Cochell in February 2005, he "yelled something and called [plaintiff] a bitch and hung up the phone."  Pl. Dep. 111:7-112:6.  In addition, plaintiff wrote a note to Tripp in April 2005 complaining about conditions in the store and wrote a letter to other managers detailing her concerns.

Plaintiff was cornered by a co-worker who said, "Why don't you just leave?  You need to leave, no one likes you here.  Cassie [Ortega] knows you complained."  Pl. Decl. ¶ 11.

PAGE 3 - OPINION AND ORDER

Plaintiff inquired about transferring to another store.  Ortega said that "as long as she was in charge that [plaintiff] better just get used to checking because [she] wasn't going to go anywhere in the company."  Pl. Dep. 109:25-110:3.

On April 22, 2005, plaintiff handed in her two-weeks notice of resignation.  Although she originally indicated that she was quitting, plaintiff subsequently asked if she could continue on a part-time basis, working one or two days a week.  Plaintiff alleges that Ortega initially agreed to this arrangement, but later told plaintiff that she could not work part-time.  Plaintiff's last day was May 9, 2005.  Following her resignation, a "do not rehire" notice was put in plaintiff's personnel file.

## II.    ANALYSIS

Plaintiff has brought the following claims: (1) hostile work environment, (2) retaliation, and (3) constructive discharge.

### 1.    Hostile Work Environment

Plaintiff asserts that defendant subjected her to a hostile work environment because of her race.  To make out a *prima facie* case of racial harassment, plaintiff must show that: (1) she was subjected to verbal or physical conduct because of her race; (2) this conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment.  *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003).  In order to be actionable, harassment must be both subjectively and objectively offensive.  *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 871-2 (9th Cir. 2001) (quotation omitted).

In evaluating the objective hostility of a work environment, the factors to be considered include the "frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation and citation omitted).

The facts in this case closely resemble those in *Manatt v. Bank of America*. The plaintiff in *Manatt* was of Chinese descent. 339 F.3d at 794. Over a span of two and a half years, the plaintiff experienced a number of racially insensitive incidents, including:

- Overhearing a co-worker tell the plaintiff's supervisor that "I am not a China man, I'm not like China man with their eyes like that." *Id.* at 795.
- Being told by her supervisor that "I've had the worst kind of trouble with your countrymen." *Id.*
- Overhearing a conversation between two co-workers who were laughing and saying "China man" and "rickshaw." *Id.* Seeing plaintiff, these co-workers pulled their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians. *Id.*
- Overhearing several racially offensive jokes being told in the cubicle next to hers, which included the phrase "China man." *Id.*
- Overhearing a co-worker referring to Chinese people as those "communists from Beijing." *Id.*
- On a single occasion, plaintiff mispronounced the word "Lima." *Id.* A co-worker, who was entertained by this, wanted her to say it again to another co-worker. She shouted at plaintiff: "China woman, China woman, China woman, get your butt over here." *Id.* When plaintiff again mispronounced the word, plaintiff's co-workers attributed this to her Chinese ethnicity and stated: "That's because she's a China woman." *Id.* at 795-96.

The Ninth Circuit concluded that "the actions of [plaintiff's] co-workers generally fall into the 'simple teasing' and 'offhand comments' category of non-actionable discrimination." *Id.* at 798 (quoting *Faragher*, 524 U.S. at 788). The court emphasized that "on only a couple of occasions did [plaintiff's] co-workers or supervisor direct their racially insensitive 'humor' at [plaintiff]." *Id.*

PAGE 5 - OPINION AND ORDER

Although plaintiff was clearly bothered by the terms "whitey" and "haole," this court concludes that the comments of plaintiff's co-workers generally fall into the "simple teasing" and "offhand comments" category of non-actionable discrimination. As in *Manatt*, the majority of racially insensitive comments in this case were not directed at plaintiff.

Plaintiff argues that this case is distinguishable from *Manatt* because the allegedly harassing conduct occurred over a shorter period of time. The plaintiff in *Manatt* was exposed to the offensive comments over a two and a half year period. In this case, plaintiff was exposed to the offensive comments over eight months, a significantly shorter period of time.

This court does not agree that the shorter period in which the harassment occurred necessitates a different outcome. In *Manatt*, a co-worker shouted "China woman, China woman, China woman, get your butt over here" at plaintiff. *Id.* at 795-96. In another incident, several co-workers pulled their eyes back with their fingers upon seeing the plaintiff. *Id*. The court deems both of these incidents more severe than any of the comments directed at plaintiff. Since the "required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct," the milder conduct in this case balances out the fact that it was arguably more frequent or pervasive. *Nichols*, F.3d at 872.

Plaintiff also argues that this case is distinguishable from *Manatt* because plaintiff's supervisor and co-workers followed her around the store and into the restroom. This alleged "surveillance," however offensive, is only minimally probative of racial harassment. In addition to Ortega, plaintiff alleges that she was followed by Kristin Lashbrook, Becca Smith-Carlson, Michelle Doss, and Olivear Henry. Three of these four co-workers – Lashbrook, Smith-Carlson, and Doss – are Caucasian.

PAGE 6 - OPINION AND ORDER

"Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) (quoting *Castaneda v. Partida*, 430 U.S. 482, 499 (1977)). Plaintiff, however, has not shown that her white co-workers were "motivated by general hostility to the presence of [Caucasians] in the workplace" or offered "comparative evidence" about how Lashbrook, Smith-Carlson, and Doss treated members of other races. *Id.* at 80-81. In fact, plaintiff testified that she never heard any white employee make a racially derogatory comment during her employment. Pl. Dep. at 140:5-8.

Plaintiff asserts that, even if they were not motivated by racial hostility, her white co-workers were acting under the orders of Ortega. Pl. Decl. ¶ 5 ("When I confronted Kristin Lashbrook regarding this constant monitoring of me, she reported to me that Ortega had asked her to follow me into the restroom to 'keep an eye on' me."). Plaintiff's allegations, if true, support her contention that she faced retaliation for complaining about workplace conditions. Plaintiff's allegations, however, provide little support for her claims of race-based harassment. Plaintiff has not alleged that Ortega uttered racially offensive comments, or otherwise demonstrated that her supervisor was motivated by racial bias. Under the circumstances, a reasonable person in plaintiff's situation would not have concluded that they were being followed "because of" their race.

In determining whether harassment is objectively hostile, courts examine "the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007). Plaintiff, a Caucasian woman, repeatedly overheard workers using the terms

PAGE 7 - OPINION AND ORDER

"whitey" and "haole."  Although plaintiff alleges that several comments were made in her direction, the record indicates that the majority were not directed at plaintiff.  In addition, plaintiff alleges that she was followed around the store by her supervisor and four co-workers. Several of these co-workers are Caucasian and there is no evidence that plaintiff's white co-workers were motivated by racial animus.

Given the minimal evidence of racially motivated harassment, this court concludes that a reasonable person with the same characteristics as plaintiff would not perceive defendant's workplace as permeated with racial hostility.  Accordingly, plaintiff's hostile work environment claim is dismissed.

### 2.    Retaliation

To make a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment action.  *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).  Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action.  Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was pretextual.

"Causation sufficient to establish . . . [a] *prima facie* case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory [activity]."  *Yartzoff*, 809 F.2d at 1376.  Plaintiff engaged in protected activity when she complained in January 2005 about racially insensitive comments being made by co-workers. Shortly thereafter, plaintiff began being followed by her supervisor and co-workers.

PAGE 8 - OPINION AND ORDER

Defendant argues that plaintiff cannot establish a *prima facie* case, because being followed around the store and into the restroom does not constitute an adverse employment action.

The Supreme Court has observed that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights and minor annoyances that often take place at work and that all employees experience." *Burlington Northern and Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Relying upon *Burlington Northern*, defendant asserts that the conduct of their employees constitutes "a minor annoyance or lack of good manners." Reply at 5. This court disagrees.

The *Burlington Northern* court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. (quotation marks omitted). In the same vein, the Ninth Circuit has held "that an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1240-43 (9th Cir. 2000).

It is this court's opinion that being repeatedly followed into the bathroom is not one of the "petty slights" or "minor annoyances" that all employees experience. Construing the facts in the light more favorable to the non-moving party, plaintiff's supervisor followed plaintiff into the restroom. When plaintiff confronted her about this behavior, plaintiff's supervisor asked four other employees to keep an eye on plaintiff and to continue following her into the restroom. A reasonable jury could conclude that this harassment was motivated by plaintiff's complaints

PAGE 9 - OPINION AND ORDER

about workplace conditions. A reasonable jury could also conclude that this harassment was reasonably likely to deter other employees from making similar complaints.

Defendant has not claimed there were any legitimate reasons for following plaintiff into the restroom. Accordingly, defendant's motion is denied as to plaintiff's retaliation claim.

### 3.    Constructive Discharge

In order to establish a claim of constructive discharge, plaintiff must show that: (1) the employer intentionally created or maintained working conditions that were so intolerable that a reasonable person in the employee's position would have resigned; (2) the employer intended to cause the employee to leave as a result of the conditions, or knew it was substantially certain they would; and (3) the employee did in fact leave as a result of the conditions. *McGanty v. Staudenraus*, 901 P.2d 841, 854 (Or. 1995); *accord Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.1987) ("A constructive discharge occurs when, looking at the totality of the circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.'" (quoting *Satterwhite v. White*, 744 F.2d 1380, 1381 (9th Cir. 1984)). A plaintiff alleging a constructive discharge must show some "aggravating factors, such as a continuous pattern of discriminatory treatment." *Satterwhite*, 744 F.2d at 1382 (internal marks and citation omitted); *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (observing that courts "set the bar high" for claims of constructive discharge because federal anti-discrimination law encourages employees and employers to work together in their existing employment relationship).

Plaintiff alleges that fellow employees continued following her into the restroom through March 2005. Pl. Decl. ¶ 30. Plaintiff tendered her two-weeks notice of resignation on Friday, April 22, 2005. Plaintiff's last day of employment was May 9, 2005.

PAGE 10 - OPINION AND ORDER

Plaintiff contends that she had no choice but to quit in May 2005. Although there is support for plaintiff's retaliation claim, this court concludes that conditions were not so intolerable that a reasonable person would be forced to resign.

The court finds it significant that plaintiff provided two-weeks advance notice of her resignation. In addition, the court notes that plaintiff wanted to continue working part-time at the Hillsboro store. Although plaintiff claimed in her complaint that she was constructively discharged, plaintiff now asserts that defendant's refusal to let her continue working means that she "did not voluntarily leave employment." Pl.'s Mem. in Opp'n at 16.

The fact that plaintiff did not quit working immediately and, moreover, was willing to continue working part-time suggests that conditions in defendant's workplace were not so "intolerable" that a reasonable person in plaintiff's condition would have felt that she was forced to quit. Because plaintiff's actions are inconsistent with her claims that she had no choice but to resign, plaintiff's claim for constructive discharge is dismissed.

## III.   CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [20] is GRANTED in part and DENIED in part. Defendant's motion is granted as to plaintiff's hostile work environment and constructive discharge claims brought pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII) and ORS 659A.030. Defendant's motion is denied as to plaintiff's retaliation claim.

IT IS SO ORDERED.

DATED this 12 day of December, 2008.

  /s/ Ancer L. Haggerty
Ancer L. Haggerty
United States District Judge

PAGE 11 - OPINION AND ORDER

PAGE 12 - OPINION AND ORDER